IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON SIMMONS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:15-CV-1700-D |
| VS. | § | |
| | § | |
| RAY JACKSON, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by *pro se* plaintiff Jason Simmons ("Simmons"), the court addresses the motion of defendant Methodist Hospitals of Dallas ("Methodist") to dismiss under Fed. R. Civ. P. 12(b)(6), the motion of defendant Texas Medical Board ("TMB") to dismiss under Rule 12(b)(1) and (5), and other motions. For the reasons that follow, the court grants defendants' motions to dismiss, denies Simmons' motion for leave to file a surreply, denies Simmons' motion for leave to file a motion for partial summary judgment, and denies as moot Methodist and TMB's motion to prohibit Simmons from filing any motion seeking affirmative relief pending rulings on defendants' motions to dismiss. The court dismisses Simmons' actions against Methodist and TMB by Rule 54(b) final judgment filed today.

I

Because this case is the subject of two prior memorandum opinions and orders, *see Simmons v. Jackson*, No. 3:15-CV-1700-D, slip op. at 1 (N.D. Tex. Oct. 24, 2016); *Simmons v. Jackson*, 2016 WL 2646738, at *1 (N.D. Tex. May 10, 2016), the court will recount only

the background facts and procedural history that are pertinent to this decision.

Simmons was an internal medicine resident at Methodist Hospital of Dallas from 2007 to 2010 and was licensed to practice medicine in the state of Texas.[1]  In May 2010 TMB initiated a proceeding against Simmons that in July 2013 resulted in the revocation of his license to practice medicine in Texas.  In July 2010 Simmons was terminated from the residency program.  Ray Jackson, Esquire ("Jackson") represented Simmons in the TMB proceeding from May 2010 until October or November 2012.

Simmons sued Methodist in 2011, alleging that it had discriminated against him on the basis of his race.  Judge Boyle granted summary judgment for Methodist in 2012.  *See Simmons v. Methodist Hosps. of Dall.*, 2012 WL 1447970, at *7 (N.D. Tex. Apr. 26, 2012) (Boyle, J.).  Jackson represented Simmons in his lawsuit against Methodist.

In 2015 Simmons brought this *pro se* action against Jackson, alleging claims for fraud,

_____

[1]In deciding Methodist's Rule 12(b)(6) motion, the court construes Simmons' fourth amended complaint in the light most favorable to him, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in Simmons' favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

A Rule 12(b)(1) motion can mount either a facial or factual challenge.  *See, e.g., Hunter v. Branch Banking & Trust Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)).  When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial.  *Id.*  The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion."  *Id.* (citation omitted) (citing *Paterson*, 644 F.2d at 523).

- 2 -

legal malpractice, and conspiracy.  Simmons later joined Methodist, TMB, and Oscar San Miguel, Esquire ("San Miguel"), who represented Simmons in the TMB proceeding after Jackson withdrew.  In August 2016 Methodist moved to dismiss Simmons' third amended complaint.  The court adopted the magistrate judge's recommendation to grant the motion in part, and the court granted Simmons leave to replead a final time.  The court ordered Simmons to file a fourth amended complaint that was typed in at least 12-point font, double-spaced, did not exceed 20 total pages, and complied with Rules 8(a), 8(d)(1), 9(b), and 10(b).

In his fourth amended complaint, Simmons brings claims for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968; civil conspiracy to deprive him of his constitutional rights, under 42 U.S.C. § 1983; civil conspiracy to deprive him of equal protection of law, under 42 U.S.C. § 1985; and breach of contract.

He alleges that defendants conspired to violate RICO, in violation of 18 U.S.C. § 1962(d).  Under the heading "ENTERPRISE," he asserts that Methodist, Jackson, San Miguel, and attorney Barbara Jordan, Esquire ("Jordan") acted together to deprive him of his medical license without due process; to conceal Methodist's violation of his rights in 2010; and to litigate against him between 2010 and 2014.  Simmons also avers that Methodist failed to disclose evidence related to his firing, submitted fabricated reports to the court and TMB, and agreed to forgo mediation in a prior lawsuit without his knowledge.  Under the heading "PATTERN OF RACKETEERING," he alleges that defendants used the mail or wires to commit fraud with the purpose of denying him due process before the court or TMB, and that

these acts lessened suspicion about his firing, denied him due process, and denied him the ability to practice medicine. Under the heading "AGREEMENT," Simmons asserts that Methodist provided false affidavits to TMB, and that Jackson concealed evidence from him. Under the heading "DAMAGES," Simmons alleges that he was damaged by the improper denial of due process and the ability to practice medicine.

Simmons next brings a claim under 42 U.S.C. § 1983, alleging that Methodist, TMB, and possibly Jordan conspired to deprive him of constitutional rights. He asserts that Methodist submitted fabricated affidavits to TMB; that TMB sent him a letter to deter him from appealing its initial order; and that Jordan falsely informed him of a settlement conference and improperly submitted reports to a state board.

Simmons next pleads that defendants conspired to deny him equal protection of the law, in violation of 42 U.S.C. § 1985. He asserts that he had completed 35 of his 36 required months of medical residency training before he was terminated in May 2010; that he was the only resident who was terminated; that he is African-American; and that race-based animus played some role in the events described. He also realleges that Methodist submitted fabricated affidavits to the court and to TMB.

Simmons next alleges that Methodist breached one or more contracts with him, including his employment agreement. According to the fourth amended complaint, Methodist's breaches include asking him on May 19, 2010 to submit to mental health screening without disclosing a proper basis for the request; failing to have a peer medical resident present at a committee meeting on May 20, 2010; denying him an opportunity to

- 4 -

discuss the results of an investigation into the residency program at the same committee meeting; failing to disclose relevant records, orders, pages, reports, and allegations during the same meeting; insufficient notice of the same meeting to give him an opportunity to prepare a defense; and denying him access to necessary information to appeal the findings of the same meeting. Simmons alleges that Methodist's CEO relied on the findings of this meeting when deciding to terminate Simmons in July 2010, and that, as a result, he has been damaged by his termination and other professional sanctions.

Methodist and TMB move to dismiss the claims against them; Simmons moves for leave to file a surreply to Methodist's motion to dismiss, and for leave to file a motion for partial summary judgment; and Methodist and TMB move to prohibit Simmons from filing any motion seeking affirmative relief pending rulings on their motions to dismiss.

II

The court begins by setting out the standards that apply to Methodist and TMB's motions to dismiss under Rule 12(b)(1) and 12(b)(6).

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). A Rule 12(b)(1) motion can mount either a facial or factual challenge. *See, e.g., Hunter v. Branch Banking & Tr. Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial. *Id.* The court assesses a facial challenge

as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true.  If the allegations are sufficient to allege jurisdiction, the court must deny the motion."  *Id.* (citation omitted) (citing *Paterson*, 644 F.2d at 523).  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

In deciding a Rule 12(b)(6) motion, the court evaluates the sufficiency of Simmons' fourth amended complaint "by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)) (internal quotation marks and brackets omitted).  To survive a motion to dismiss under Rule 12(b)(6), plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the

court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (brackets omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

III

The court turns first to Methodist's requests that Simmons' RICO conspiracy claim be dismissed.

A

Any RICO claim, including a RICO conspiracy claim under 18 U.S.C. § 1962(d), must include "(1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Orthoflex, Inc. v. ThermoTek, Inc.*, 2012 WL 2864510, at *2 (N.D. Tex. July 12, 2012) (Fitzwater, C.J.); *see St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000) (holding that these elements are required for any RICO claim under § 1962(a), (c), or (d)).

Section 1961(1) defines "racketeering activity" in part as "any act which is indictable" under several specified sections of the United States Code or state law. Section 1961(5)

- 7 -

defines "pattern of racketeering activity" as "requir[ing] at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity[.]"

"To establish a pattern of racketeering activity, [Simmons] must allege (1) the predicate acts of racketeering activity, and (2) a pattern of such acts." *Orthoflex*, 2012 WL 2864510, at *2 (citing *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993)). A pattern of racketeering activity must include two or more acts of racketeering activity. *See* 18 U.S.C. § 1961(5). "[A] 'pattern' requires both that the acts are 'related' to each other and that they have 'continuity.'" *Burzynski*, 989 F.2d at 742 (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). "It is this factor of *continuity plus relationship* which combines to produce a pattern." *H.J. Inc.*, 492 U.S. at 239 (emphasis in original) (citation and internal quotation marks omitted). Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240 (citation omitted). Predicate acts under RICO include mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343. *See Samsung Elecs. Am., Inc. v. Chung*, 2017 WL 635031, at *6 (N.D. Tex. Feb. 16, 2017) (Fitzwater, J.).

B

Methodist contends that Simmons has not adequately pleaded a pattern of racketeering activity. It posits that the only potential predicate acts that Simmons alleges are use of the

- 8 -

mail or wires to send information to Simmons about his case. Methodist maintains that, to the extent any predicate acts are discernible from the fourth amended complaint, they are not related, and they lack continuity. And Methodist asserts that Simmons' only allegations of relatedness are conclusory statements, such as that the acts "all served to lessen suspicion about the hospital's firing of the plaintiff." 4th Am. Compl. ¶ 12. Methodist also contends that Simmons' attempt to incorporate portions of other filings by reference does not satisfy his burden to allege a pattern of racketeering activity, because Simmons cannot incorporate parts of his improperly filed summary judgment motion or his deficient third amended complaint.

Simmons responds that his incorporations are permissible under Rule 10(c), and that when the incorporated material is taken into account, he has sufficiently pleaded a pattern of racketeering activity. He contends that he did not incorporate the entire (189-page) third amended complaint, but only particular counts with noticeable headings, and that the magistrate judge took note of these same counts in his findings, conclusions and recommendation. Simmons maintains that the predicate acts had similar methods of execution, purpose, and victim, and occurred over a substantial period of time.

C

The court concludes that Simmons has not plausibly pleaded a pattern of racketeering activity. The only predicate acts that the fourth amended complaint potentially alleges are mail and wire fraud by TMB and Jordan, which it sets out in the civil conspiracy count but references in the RICO conspiracy count. Simmons does not allege with the required

particularity any predicate acts that Methodist allegedly committed.  *See Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992) (holding that RICO mail fraud must allege time, place, contents and identity of false representation).  And the predicate acts attributed to TMB and Jordan lack continuity, because, like the predicate acts in *Burzynski*, they are all related to a legal proceeding that is now concluded (in this case, the proceeding before TMB).  *See Burzynski*, 989 F.2d at 743.  The predicate acts alleged in the fourth amended complaint do not constitute or threaten long-term criminal activity.  *See id.*

The court declines to search the third amended complaint or Simmons' prior motion for partial summary judgment for allegations of a pattern of racketeering activity.  Rule 10(c) provides that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."  If a party avails himself of Rule 10(c), "references to prior allegations must be direct and explicit, in order to enable the responding party to ascertain the nature and extent of the incorporation."  5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1326, at 431-32 (3d ed. 2004 & Supp. 2017) (footnotes omitted).

In this case, after dismissing Simmons' prolix second and third amended complaints, the court ordered Simmons to set out his claims in a fourth amended complaint that was typed in at least 12-point font, double-spaced, and did not exceed 20 pages.  In its order, the court adopted the magistrate judge's conclusion that neither the court nor defendants were required to search through the 189-page, single-spaced third amended complaint to identify Simmons' claims.  For the same reasons set out in those decisions, Simmons may not plead

a pattern of racketeering activity by generally incorporating his third amended complaint without including page or paragraph number references. And Simmons is not permitted to incorporate by reference his motion for partial summary judgment because this practice is not authorized by Rule 10(c) or any other authority that has been identified.

Accordingly, the court dismisses with prejudice Simmons' RICO conspiracy claim against Methodist.

IV

The court next addresses Methodist's request to dismiss Simmons' civil conspiracy claims.

A

42 U.S.C. § 1983 "provides a civil remedy in federal court for violations, under color of state law, of a person's constitutionally recognized rights, privileges, or immunities." *Bledsoe v. City of Horn Lake, Miss.*, 449 F.3d 650, 653 (5th Cir. 2006) (citing *Findeisen v. N.E. Indep. Sch. Dist.*, 749 F.2d 234, 236-37 (5th Cir. 1984)). To support a conspiracy claim under § 1983, Simmons "must allege facts that suggest: 1) an agreement between the private and public defendants to commit an illegal act, and 2) an actual deprivation of constitutional rights." *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) (citations omitted).

To state a claim under 42 U.S.C. § 1985 for denial of equal protection, Simmons must allege that

- 11 -

> "(1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a racial animus."

*Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 n.12 (5th Cir. 2001) (quoting *Wong v. Stripling*, 881 F.2d 200, 202-03 (5th Cir. 1989)).

B

Methodist contends that Simmons has not stated a claim for civil conspiracy under § 1983 or § 1985 because he does not sufficiently allege that Methodist agreed to commit an illegal act.

Regarding his § 1983 claim, Simmons responds that Methodist provided TMB with fabricated affidavits, which led TMB to wrongfully sanction him. He contends that TMB and Jordan pursued a scheme to sanction his medical license. And he maintains that Methodist need not have agreed to the details of a conspiracy, so long as it understood and accepted the conspiracy's general objectives and agreed to do its part to further them (citing *United States v. Andolschek*, 142 F.2d 503, 507 (2d Cir. 1944)). Regarding his § 1985 claim, Simmons contends that Methodist agreed with Jackson, Jordan, and San Miguel to violate the law, specifically by submitting joint status reports and motions to the court during Simmons' prior lawsuit. Simmons maintains that Methodist and Jackson agreed to forgo mediation without his permission.

- 12 -

C

The court concludes that Simmons has not pleaded a plausible claim for relief under § 1983. Aside from the conclusory label that a conspiracy existed, Simmons' only allegation of an agreement between Methodist and a public defendant is that Methodist provided fabricated affidavits to TMB. Even taking the fabrication as true (which is itself an unsupported conclusory label), this allegation does not suggest that an agreement existed between Methodist and TMB. *See Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008) (holding that conspiracy claim under § 1983 must allege specific facts to show agreement).

The court likewise concludes that Simmons has not pleaded a plausible claim for relief under § 1985. He alleges that Methodist and Jackson joined in motions without authorization from Simmons, who was Jackson's client. But aside from relying on unsupported labels and conclusions, Simmons has not alleged that Methodist knew that Jackson had exceeded his authority, or that Methodist otherwise agreed to commit an illegal act. *See id.* at 497 (holding that no conspiracy existed where defendants were unaware of illegality).

Accordingly, the court dismisses with prejudice Simmons' civil conspiracy claims against Methodist.

V

The court now turns to Methodist's contention that Simmons' contract claims are time-barred.

A

Under Texas law, "breach of contract claims are subject to a four-year statute of

- 13 -

limitations." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 386 (5th Cir. 2007).

"'[C]ontract claims generally accrue when the contract is breached.'" *Id.* 387 (quoting

*Hoover v. Gregory*, 835 S.W.2d 668, 677 (Tex. App. 1992, writ denied)).

"'Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the

facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be

dismissed if a successful affirmative defense appears clearly on the face of the pleadings.'"

*Sivertson v. Clinton*, 2011 WL 4100958, at *2 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.)

(quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)); *see also White v.

Padgett*, 475 F.2d 79, 82 (5th Cir. 1973) (holding that claim is "subject to dismissal under

Rule 12(b)(6) . . . when [an] affirmative defense clearly appears on the face of the

complaint."). "In the usual case, this court is unable to grant dismissal under Rule 12(b)(6)

based on an affirmative defense because it rarely appears on the face of the complaint."

*Simon v. Telsco Indus. Emp. Benefit Plan*, 2002 WL 628656, at *1 (N.D. Tex. Apr. 17, 2002)

(Fitzwater, J.). Furthermore, "[i]t is well settled . . . that in order for a defendant to prevail

on the basis of limitations at the pleadings stage, the plaintiff must normally plead himself

out of court." *W. Fork Partners, L.P. v. Chesapeake Exploration, L.L.C.*, 2009 WL 2252505,

at *5 (N.D. Tex. July 29, 2009) (Fitzwater, C.J.) (quoting *Funches v. City of Dallas*, 1999

WL 261842, at *2 (N.D. Tex. Apr. 28, 1999) (Fitzwater, J.)).

B

Methodist contends that Simmons first brought his contract claims on June 1, 2016,

and any claim arising from a breach that occurred before June 1, 2012 is therefore time-

barred.  Methodist maintains that all of Simmons' contract claims arise from his separation from Methodist in 2010, and are time-barred.

Simmons does not dispute that his contract claims were filed after the limitations period had run; he contends that the statute of limitations should be tolled based on Jackson's alleged legal malpractice.

C

The court concludes that the affirmative defense of limitations appears clearly on the face of Simmons' fourth amended complaint.  Simmons alleges 11 breaches and clearly alleges that each one occurred between May and July 2010.  It is apparent from the face of Simmons' fourth amended complaint that each of his contract claims arose, and he knew of the factual basis for the claim, more than four years before he brought the claim in this case.  *See Simon*, 2002 WL 628656, at *1-2 (dismissing claims that on face of complaint were clearly time-barred).

The court also concludes that Simmons has not plausibly pleaded that the limitation period for his breach of contract claims has been equitably tolled.  Texas law recognizes the common law doctrine of equitable tolling when "a claimant actively pursued his judicial remedies but filed a defective pleading during the statutory period, or where a complainant was induced or tricked by his adversary's misconduct into allowing filing deadlines to pass." *Bailey v. Gardner*, 154 S.W.3d 917, 920 (Tex. App. 2005, no pet.).  Attorney negligence is ordinarily not sufficient to invoke equitable tolling.  *See Harris v. Boyd Tunica, Inc.*, 628 F.3d 237, 240 (5th Cir. 2010).  The fourth amended complaint alleges that Jackson waived

- 15 -

mediation in prior litigation without proper authority from Simmons, and Simmons' brief contends that Jackson was aware of the contract claims before the limitations period ran. Aside from conclusory labels, these are Simmons' only relevant factual contentions, and they do not plausibly plead that Simmons is entitled to equitable tolling of the statute of limitations for contract claims. *See id.*; *see also Simmons v. Methodist Hosps. of Dall.*, 106 F.Supp.3d 799, 806 (N.D. Tex. 2015) (Boyle, J.) (rejecting same attorney malpractice contention and dismissing Simmons' employment discrimination retaliation claim as time-barred).

Accordingly, the court dismisses Simmons' contract claims against Methodist.

VI

The court now turns to TMB's motion to dismiss Simmons' claims based on sovereign immunity.

A

"Eleventh Amendment sovereign immunity deprives a federal court of jurisdiction to hear a suit against a state." *Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996). TMB posits that it is an agency of the State of Texas, *see* Texas Occupations Code § 152.001 (West 2012), and that, absent consent, a suit against a state agency is barred by the Eleventh Amendment, *see Lewis v. University of Texas Medical Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011). TMB posits that Texas has not consented to this suit, and that Congress has not abrogated sovereign immunity for the claims Simmons advances. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) (42 U.S.C. § 1983); *Quern v. Jordan*, 440 U.S.

- 16 -

332, 339-46 (1979) (Civil Rights Act of 1871, which includes provision codified at 42 U.S.C. § 1985); *Gaines v. Tex. Tech Univ.*, 965 F. Supp. 886, 889 (N.D. Tex. 1997) (Fitzwater, J.) (RICO Act).  TMB therefore maintains that the court lacks jurisdiction regardless of whether damages or prospective relief is sought.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

Simmons acknowledges TMB's sovereign immunity under the Eleventh Amendment. He nevertheless contends that the court should exercise supplemental jurisdiction over his claims against TMB (citing 28 U.S.C. § 1367); that the court has jurisdiction over his § 1983 and § 1985 claims (citing 28 U.S.C. § 1343); and that the court has jurisdiction over his RICO claim.  Simmons also maintains that TMB adopted a policy, practice, or custom that violated his constitutional rights, and that sovereign immunity does not protect local governments.

B

The court concludes that it lacks jurisdiction over Simmons' claims against TMB because TMB is a state agency, Texas has not consented to suit, and Congress has not abrogated sovereign immunity for the claims that Simmons advances against TMB.  *See Lewis*, 665 F.3d at 630.  Simmons' contentions that the court should exercise supplemental jurisdiction, and that the court would otherwise have jurisdiction over these types of claims, do not undermine the conclusion that the court lacks jurisdiction to entertain the claims against this particular defendant.  *See id.*  And Simmons' arguments about local governments and unlawful policy, practice, or custom do not apply to TMB because it is a state agency.

- 17 -

Accordingly, the court dismisses Simmons' claims against TMB for lack of jurisdiction.

## VII

The court denies Simmons' motion for leave to file a surreply to Methodist's motion to dismiss because the proposed surreply does not raise matters that would materially alter the court's analysis.

## VIII

The court denies Simmons' motion for leave to file a motion for partial summary judgment against Methodist, TMB, and Jordan because the court is dismissing Simmons' claims against Methodist and TMB, and Jordan has not been served with process in this case.

## IX

The court denies as moot Methodist and TMB's motion to prohibit Simmons from moving for affirmative relief before their motions to dismiss are decided.

\*    \*    \*

Accordingly, for the reasons explained, the court dismisses Simmons' action against Methodist and TMB by Rule 54(b) final judgment filed today.

**SO ORDERED**.

July 19, 2017.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE